[Civ. No. 4801. Third Appellate District.—April 26, 1933.]

JOHN J. ABDALLAH, etc., Respondent, v. OTTO F. BARTH et al., Appellants.

Sydney C. Bennett for Appellants.

Levinsky & Jones for Respondent.

PLUMMER, J.—The plaintiff had judgment in an action brought to recover the value of empty beer bottles and cases obtained by the defendants from the plaintiff and contracted to be returned by the defendants to the plaintiff. From this judgment the defendants appeal.

It appears from the record that the plaintiff and the defendants, in 1926, entered into an agreement whereby the plaintiff, as a wholesaler, agreed to sell and deliver to the defendants, as retailers, near-beer at a price agreed upon between them. The cases in which the bottles containing near-beer should be contained were to be redelivered by the defendants to the plaintiff, and also the bottles as soon as the same were emptied. In other words, the bottles containing the beer and the cases in which the bottles were placed for shipment were to be retained by the defendants until the beer was sold and consumed, and then returned by the defendants to the plaintiff. The agreement also was to the effect that in the event the defendants failed to return any of the bottles or cases, payment was to be made by the defendants to the plaintiff for the bottles and cases not returned. The cases and bottles were to be returned according to the agreement when the bottles were emptied. This duty devolved upon the defendants. The time specified for the return of the bottles and cases depended upon their being emptied, but upon being emptied the agreement called for their return. After the entering into this agreement, the plaintiff continued to supply the defendants with

near-beer bottled and delivered in cases according to the agreement of the parties. From time to time, as empty bottles accumulated, they were placed in cases and returned by the defendants to the plaintiff. This business arrangement was continued between the plaintiff and the defendants until early in the year 1929. On or about the sixth day of June, 1929, a warehouse operated by the defendants, in which they had stored a large number of cases and bottles which they previously had obtained from the plaintiff, was destroyed by fire. The cases burned and the bottles were ruined. The plaintiff sued for the value of the cases and bottles, alleging that the defendants had negligently failed and neglected to return the same within a reasonable time after demand had been made therefor, and consequently were liable for the value of plaintiff's property destroyed by the fire.

The trial court found that the fire was not attributable to any carelessness or negligence on the part of the defendants, and after finding the value of the property, made two findings upon which the liability of the defendants is predicated, to wit:

"That on numerous occasions prior to the 6th day of June, 1929, the said plaintiff demanded of the said defendants that they return to him the bottles and cases belonging to him, and which had not been returned by them to him, and the said defendants failed, neglected and refused to return them, or any part or portion thereof, except the 60 hand cases delivered by them to the said plaintiff on or about the 30th day of May, 1929.

"That said defendants were careless and negligent, and particularly after demand was made upon them, in failing and neglecting to return to the said plaintiff the aforesaid cases and bottles belonging to him. That the said defendants, under the circumstances, were careless and negligent, and particularly after demand was made upon them, in keeping the aforesaid cases and bottles for such a long period of time; that by reason of the carelessness and negligence of the said defendants, as aforesaid, said cases and bottles were destroyed by the fire that occurred on the premises of the said defendants."

The sufficiency of the testimony to support these findings is challenged by the appellants.

No controversy is tendered as to the agreement between the parties as to the price at which the near-beer was to be sold; that it was to be delivered in cases and bottles, and that the defendants were to redeliver the cases and bottles as soon as the bottles were emptied, and also to pay for any cases and bottles not redelivered.

It is first contended by the appellants that the finding of the trial court as to a demand being made for the return of the cases and empty bottles is unsupported. After stating that the defendants had ceased buying beer from the plaintiff, the testimony of the witness Abdallah is as follows: "Q. State if you ever heard there was a fire out at their place? (Referring to the defendants' place of business.) A. Yes. Q. Can you state how long prior to the time of the fire, if at all, you demanded of the defendants, the return of the empty bottles and cases? A. Yes, sir. Q. About when, how long before the fire? A. It was not very long, mostly every month we ask the customer for cases, but I don't remember the dates, or how long. Q. At the time when they stopped buying beer from you, state whether or not there were any empty bottles or cases they had not returned? A. Yes, sir. Q. And state whether or not you demanded the return of them? A. Yes, I did." The testimony of this witness was further to the effect that after the fire, and before the beginning of this action, demand was made for the return of the empty bottles and cases.

The defendant Otto Barth testified as follows: "During the years 1926–1929, we did business with the plaintiff; purchased beer from him. On the 6th day of June, 1929, we had a fire. I had between 150 and 200 cases, shipping cases, on hand, 3 dozen bottles to the case, and I think there is approximately 600 or 700 cases of two dozen bottles each. Of these, 194 cases containing 3 dozen bottles each, and also 1360 ⅔ dozen bottles in addition to that, belonging to the plaintiff, were on the premises at the time of the fire. Previous to the fire I had collected them; I do not know how long; a month or two; perhaps 2 or 3 months; I always waited until a certain amount accumulated before returning them; I would have to have a man take them, have enough for a cargo, to get a truck to return them; one hundred and fifty-two dozen cases would be sufficient to return. At the time of the fire there were between 600

or 700 two dozen cases on the premises; a good many of them belonged to Abdallah; I think the majority of the bottles in the two dozen cases were from Abdallah. 'Q. Why didn't you return them? A. I just didn't happen to get a truck to haul them away, to haul them to the depot.' The cases and bottles were stacked in a warehouse adjoining my store. I had them against the wall on the outside, some in the basement, some in the frigidaire. I returned cases and bottles to Mr. Abdallah when I started to do business with him from time to time as various cases and bottles were empty. The bottles contained near-beer when I bought them; that was my part of the bargain—that I must ship the cases back—all those, after they were empty. Q. Had Mr. Abdallah ever demanded of you that you return the bottles and cases? A. Yes. Once in a while he would tell me; said that they were short of cases at the brewery, and if I had any on hand, to return them. Q. Did you ever count the cases containing three dozen bottles, that were in your possession at the time of the fire? A. Well, I roughly counted sometimes, yes. Q. How many cases were there of the three-dozen type? A. Two or three hundred cases always around. I counted the bottles that were owned by plaintiff that we had in our possession at the time of the fire, like the rest of them; I checked them once every month or two; it might have been a month or two weeks or three weeks before the fire that I counted those bottles.''

The record shows that the plaintiff and the defendants discontinued doing business with each other on the tenth day of May, 1929, and the fire occurred twenty-seven days later. The record further shows the value of cases, bottles and beer delivered by the plaintiff to the defendants to be the sum of $13,803.40, against which there is a credit of $250 in cash and the value of property returned in the sum of $13,008.20, leaving the value of property unreturned by the defendants to the plaintiff in the sum of $795.20. The number of cases containing 36 bottles each returned by the defendants to the plaintiff at different times, ranges all the way from 10 cases to 255 in number. The record also shows that during the course of business conducted between the plaintiff and the defendants numerous redeliveries were made practically every month; that occasionally, however, as many as twenty days would intervene between deliveries,

and once or twice during the winter-time it appears that at least a month intervened between deliveries. During the summer season, however, deliveries appear to have been made in most instances at intervals, with only a week or ten days intervening. The number of cases and bottles handled ran into the thousands. In only six instances, however, during nearly the four years' time that elapsed while the plaintiff and the defendants were doing business with each other, did the number of cases at any one delivery exceed 150 cases, specified in the defendants' testimony as being sufficient to constitute a redelivery shipment.

As against this, the record shows deliveries of cases of not over 10 in number, ranging from that as the lowest up to one delivery of 190, one delivery of the number of 244, another delivery of 255, one of 211, one of 201, and also one of 300. The average number of cases, however, as shown by the record, of the several deliveries was less than 100.

As contended for by the appellants no stipulated time, that is, no fixed days as to dates and days, were determined upon by the agreement, when the cases and bottles were to be returned, but as a matter of fact the agreement did call for the return of the cases and bottles as soon as the purposes for which they had been delivered, had been fulfilled.

A witness for the plaintiff, on cross-examination, testified as follows: ''Q. Whose duty was it, if you know, to request the return of the bottles and cases? A. That is an ordinary routine of work in our line, and I don't believe you could say anyone is appointed to make a request. The customer was always doing that himself; return the bottles. Q. And isn't it true that the customers, and this includes my client and your other clients, would return bottles and cases, which were returnable, at irregular intervals as they collected them, and in varying quantities, that is true, isn't it? A. Yes, that is true. We hal no stipulated agreement with any client more than to return a certain quantity—they returned them as they accumulated.''

The record, as we have stated, shows that at least twenty-six days intervened from the time the cases and bottles sued for were collected by the defendants, and not delivered by

them to the plaintiff. It also shows that a considerable number of the cases and bottles, just how many does not appear, had been on hand available for redelivery from one to two months. After the business relations between the parties had ceased, and before the fire, the plaintiff requested the return of the cases and empty bottles. Just exactly how long preceding the fire this request was made does not clearly appear, but upon this testimony the court found that the defendants had neglected to return the cases and bottles within a reasonable time after such request.

In 19 California Jurisprudence, pages 548, 549, the text reads: "Neglect may be active or passive in character, and may consist in heedlessly doing an improper thing, or in heedlessly refraining from doing a proper thing. One who does not do what he should do is chargeable with neglect equally with him who does that which he should not . . . Negligence is a comparative and not a positive term, whether applied to the acts of a plaintiff or of a defendant. It is determined in all cases by reference to the situation and knowledge of the parties and to all the attendant circumstances. What would be extreme care under one condition of knowledge and one set of circumstances, might be gross negligence with different knowledge and changed circumstances. Of necessity the question is nearly always one of fact for the jury."

In this case the question of whether the defendants negligently failed to return the empty cases and bottles for an unreasonable length of time after the plaintiff had requested their return was one of fact for the trial court. The same principle of law is approved in the case of *Wolfe v. George, Inc.*, 110 Cal. App. 532 [294 Pac. 436], where this court was considering the question of conversion. This court there said: "The period of time and the circumstances which will constitute conversion of property wrongfully withheld from the owner are largely questions of fact for the determination of the court or jury." In the case at bar the defendants understood that their part of the contract required the return of the cases and bottles as soon as they were empty, and by the testimony of one of the defendants it is admitted that 150 cases constituted a sufficient quantity to require a return thereof. Redelivery was not made. A number of these cases and the empty bottles, as we have

stated, were retained by the defendants for one or two months, and the total number of 194 cases, and also the bottles sued for were held without effort to make redelivery from May 10 to June 6, 1929, and were withheld, as found by the trial court, for an unreasonable length of time after request for redelivery had been made.

These facts are sufficient to support the findings of the court and sustain the judgment without entering into any discussion of the law of bailments.

The judgment is affirmed.

Thompson, J., and Pullen, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 26, 1933.